Rukrin, J.
 

 Of course, the small sum in the hands of Giles Harris, as administrator of his mother, is subject to distribution amongst her next of kin, and there is no reason why it should not be made immediately.
 

 The personal estate of the testator, Harris, in the hands of Ross, cannot, until after the sale of the land. It is, indeed, applicable to the legacies to the two sons, and the grandson, but it may not be in equal proportions. For the latter legacy is payable out of the personal estate only, while the other two are charged upon the whole estate, including the land.— Neither is to be defeated, if there are funds for their satisfaction, and, as it is ascertained that the personalty is not sufficient, and that, if
 
 divided,pro
 
 rata, the grandson will lose the the larger part of what is given to him, the application must be deferred until it shall appear what the land will raise, clear of Sarah’s incumbrance, as it may bring enough to allow a payment in full to the grandson out of the personal estate, and then leave a sum, with the residue of the personal estate, sufficient to pay the $300 to each of the sons. In the meanwhile, the parties may require Ross to bring the money into court, and have it invested at interest, until it shall be seen how it ought to be applied. This is upon the common doctrine that testators intend the payment of all their legacies, if there be funds, and that where one legatee can resort to two funds, he shall not resort to the one, in the first instance, to which alone the other can look, so as to exhaust it, and defeat the latter.
 

 "With respect to the principal question, arising out of the provision for the daughter, Sarah, it may be observed that it is assumed in the pleadings on both sides, that it is the preferable charge; and the Court considers that to be correct. That charge, attached to the land immediately upon the death of
 
 *417
 
 the testator, and came into enjoyment as against the mother, the tenant for life; she held subject to it, and the will continues it, during the daughter’s life; consequently, it continues to exist in the same state against those who take after the mother. But it is nothing more than a charge. No estate in the land vested in her, nor any right to the possession against the heirs at law. It is clear, that the testator did not intend any thing of that kind; because he directs the $600 for his sons to be raised out of
 
 Ids estate at the death of Ids
 
 wife, and, therefore, he must have contemplated that a sale might then be necessary, notwithstanding the daughter might be living. All the perplexity in the case, arises, therefore, out of a doubt, whether a sale will insure a proper maintenance for the daughter and leave any thing for the heirs, or the two sons. If it will not, as the master finds, it is manifest, that a sale can do no good to any one; and, therefore, as the land is all she has to look to, and she is willing to occupy it for her charge, there ought not, in that case, to be a sale, but she ought to be left in the enjoyment, unless the residuary devisees prefer having it sold, and securing to her an annual sum for maintenance.— That is not likely to take place, as she, and the defendant, Giles, are two of the devisees, and they are both opposed to the sale, at present. But, the other parties insist that the land will bring a sum sufficient to secure the sister’s maintenance, —-discharge the pecuniary legacies, and leave a surplus; and they further insist, that the only way to determine that, is by a sale. The Court, therefore, though inclined to concur with the master, as to the arrangement, best for the family, is obliged to have regard to the rights of the legatee, John Harris, and of those entitled to the residue, so as to give them the opportunity of, at least, an experimental sale, whereby it can be seen whether it will duly secure the maintenance of Sarah, and at the same time, yield anything for the other parties. It must, therefore, be declared, that Sarah is now entitled to the sum of $80 annually, for her maintenance, and also, that she is entitled to have such further sum allowed her annually, as from time to time, from her increasing age and infirmities may
 
 *418
 
 be proper, with liberty to her to apply therefor. The sale will, therefore, be made on these terms: That the purchaser shall give bond and good security to pay into Court, on a certain day, annually, the sum of $80, for the use of Sarah during her life, and that the same shall also be a charge on the land, and that for tbe principal sum, which, at six per centum, will yield interest to the amount of $80, namely, the sum of $1333.33-J, the purchaser shall give bond and good security, payable upon the death of Sarah, and as a further security, that the title of tbe land be retained until the further order of the Court: and that for the residue of the price, over and above the sum of $1333.33i, the purchaser give bond and good security, payable at one and two years with interest from the first day of the next term of this Court, subject, when collected, to the future order of the Court, so that it may be applied, if need be, to enlarging the allowance to Sarah, or to the other purposes of tbe will as may be right. U nless the land should, therefore, bring at least $1650, it would not, in the opinion of the Court, yield an adequate security for the daughter’s maintenance, and the sale ought not to be confirmed, but, she left in the occupation according to her offer; and, therefore, the master will not let a purchaser into possession at a
 
 less
 
 price than that sum, until he shall have reported the sale to the Court, and the further order of tbe Court thereon.
 

 Per Curjam, Decree accordingly.